# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| YOSVANY MAZA PORTILLA, | Case No. 1:26-cv-00494-EPG-HC |
| Petitioner, | A-Number: 209-954-595 |
| v. | ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS AND DIRECTING RESPONDENTS TO IMMEDIATELY RELEASE PETITIONER |
| WARDEN OF THE GOLDEN STATE ANNEX ICE DETENTION FACILITY, et al., | |
| Respondents. | |

Petitioner, represented by counsel, is a federal immigration detainee proceeding with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. The parties have consented to the jurisdiction of a United States magistrate judge. (ECF Nos. 6–8.) For the reasons set forth herein, the petition for writ of habeas corpus is granted and Respondents are directed to immediately release Petitioner.

**I.**

**BACKGROUND**

Petitioner is a citizen of Cuba who was admitted to the United States on May 27, 2017. (ECF No. 10 at 56.[1]) Since his admission, Petitioner has a lengthy criminal history.[2] (Id. at 8, 15–54). On April 7, 2025, Petitioner was served with a notice to appear, placing him in removal

---

[1] Page numbers refer to ECF page numbers stamped at the top of the page.

[2] Petitioner's misdemeanor convictions include shoplifting via concealment in 2023, extreme DUI with a BAC of 0.15 to 0.20 in 2023, and shoplifting in 2024. On November 4, 2024, Petitioner pleaded guilty to multiple counts of felony organized retail theft of merchandise for which he was sentenced to two years imprisonment and four years of supervised probation. (ECF No. 10 at 8.)

1

proceedings and charging him as removable pursuant to sections 237(a)(2)(A)(iii) and 237(a)(2)(A)(ii) of the Immigration and Nationality Act ("INA"). (ECF No. 10 at 56–59). Petitioner was taken into ICE custody pursuant to 8 U.S.C. § 1226(c). (Id. at 9.)

On November 14, 2025, an immigration judge ("IJ") conducted an individual merits hearing on Petitioner's application for relief from removal, denied his application, and ordered Petitioner removed to Cuba. (ECF No. 10 at 61–64.) Petitioner did not file an appeal of this decision within thirty days. (Id. at 2.)

On January 28, 2026, U.S. Immigration and Customs Enforcement ("ICE") served Petitioner with notice of third country removal to Mexico, but Petitioner refused to sign. (ECF No. 10 at 66.) On February 10, 2026, U.S. Citizenship and Immigration Services ("USCIS") conducted a third country screening interview and determined that Petitioner did not establish that it is more likely than not that he would be persecuted or tortured in Mexico. (Id. at 67.) Petitioner was set to be removed to Mexico, but Petitioner refused to cooperate to facilitate removal. ICE Enforcement and Removal Operations ("ERO") is in the process of receiving permission to remove Petitioner to an alternate third country, or in the alternative, repatriate him to Cuba. (Id. at 69.)

On January 21, 2026, Petitioner filed a petition for writ of habeas corpus. (ECF No. 1.) On March 24, 2026, Respondents filed a response. (ECF No. 10.) On March 26, 2026, the Court appointed counsel for Petitioner. (ECF No. 12.) Petitioner is proceeding on the original *pro se* petition. On May 13, 2026, Petitioner filed a traverse. (ECF No. 19.)  To date, no sur-reply has been filed, and the time for doing so has passed.

## II.

## DISCUSSION

### A. Zadvydas

In the petition, Petitioner asserts that his prolonged detention without a bond hearing violates due process. (ECF No. 1 at 7–18.) Given that Petitioner is subject to a final order of removal, the petition cites to Zadvydas v. Davis, 533 U.S. 678 (2001), and Petitioner is proceeding on his original *pro se* petition, the Court construes the petition as also raising a claim

pursuant to Zadvydas. See United States v. Qazi, 975 F.3d 989, 992–93 (9th Cir. 2020) ("It is an entrenched principle that pro se filings however inartfully pleaded are held to less stringent standards than formal pleadings drafted by lawyers. We are specifically directed to construe pro se pleadings liberally. This duty applies equally to pro se motions and with special force to filings from pro se inmates." (internal quotation marks and citations omitted)).

Congress has enacted a complex statutory scheme governing the detention of noncitizens during removal proceedings and following the issuance of a final order of removal. "Where an alien falls within this statutory scheme can affect whether his detention is mandatory or discretionary, as well as the kind of review process available to him if he wishes to contest the necessity of his detention." Prieto-Romero v. Clark, 534 F.3d 1053, 1057 (9th Cir. 2008).

"Section 241(a) of the Immigration and Nationality Act (INA), codified at 8 U.S.C. § 1231(a), authorizes the detention of noncitizens who have been ordered removed from the United States." Johnson v. Arteaga-Martinez, 596 U.S. 573, 575 (2022). "In particular, § 1231(a)(6) provides that after a 90-day 'removal period,'[3] a noncitizen 'may be detained' or may be released under terms of supervision." Id. "After the removal period expires, the Government 'may' detain only four categories of people: (1) those who are 'inadmissible' on certain specified grounds; (2) those who are 'removable' on certain specified grounds; (3) those it determines 'to be a risk to the community'; and (4) those it determines to be 'unlikely to comply with the order of removal.'" Id. at 578–79 (quoting 8 U.SC. § 1231(a)(6)).

In Zadvydas v. Davis, 533 U.S. 678 (2001), the Supreme Court addressed a challenge to prolonged detention under § 1231(a)(6) by noncitizens who "had been ordered removed by the government and all administrative and judicial review was exhausted, but their removal could not be effectuated because their designated countries either refused to accept them or the United States lacked a repatriation treaty with the receiving country." Prieto–Romero, 534 F.3d at 1062 (citing Zadvydas, 533 U.S. at 684–86). The Supreme Court "read an implicit limitation" into the

---

[3] "The removal period begins on the latest of three dates: (1) the date the order of removal becomes 'administratively final,' (2) the date of the final order of any court that entered a stay of removal, or (3) the date on which the alien is released from non-immigration detention or confinement." Johnson v. Guzman Chavez, 594 U.S. 523, 528 (2021) (citing 8 U.S.C. § 1231(a)(1)(B)). "During the removal period, detention is mandatory." Guzman Chavez, 594 U.S. at 528 (citing 8 U.S.C. § 1231(a)(2)).

statute "in light of the Constitution's demands," holding that § 1231(a)(6) does not authorize indefinite detention and "limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States." Zadvydas, 533 U.S. at 689.

> After [a presumptively reasonable] 6–month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink. This 6–month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

Zadvydas, 533 U.S. at 701.

Here, the removal period began on the date the order of removal became administratively final on December 15, 2025, and Zadvydas' presumptively reasonable six-month period has elapsed. "Courts routinely find that noncitizens" who "cannot be removed to" the country listed in their removal orders and do "not have citizenship or significant ties to any other count[r]y, and [where] there is no evidence that any other country is willing to accept [a] third country removal under 8 U.S.C. § 1231(b)(2)(E)," "have met their initial burden under Zadvydas." Elshourbagy v. Bondi, 817 F. Supp. 3d 1102, 1109 (W.D. Wash. 2025) (collecting cases). Here, as noted by Petitioner, "[r]epatriation to Cuba did not occur. The reason for failure of repatriation is not clear although implicitly it is due to the long-standing lack of cooperation between Cuba and the United States." (ECF No. 19 at 2.) Although Respondents appear to have attempted to remove Petitioner to Mexico in violation of the requirements of due process, as set forth in section II(B), infra, Respondents have provided no evidence that Mexico is willing to accept Petitioner for a third-country removal under 8 U.S.C. § 1231(b)(2)(E). "[T]hird country removal still requires the affirmative assent of the receiving country." Ndandu v. Noem, 819 F. Supp. 3d 1155, 1161 (S.D. Cal. 2026) (citing 8 U.S.C. § 1231(b)(2)(E)(vii)). "Even if Petitioner was to be removed to a third country, that process 'would require additional, lengthy proceedings' because of

Petitioner's right to seek fear-based relief." Riveros Cadavid v. Dep't of Homeland Sec., No. EDCV 26-01805-KK-DTBX, 2026 WL 1105032, at *3 (C.D. Cal. Apr. 17, 2026) (quoting Ndandu, 2026 WL 25848, at *5). "Among other things, Petitioner 'likely will have the opportunity to seek further relief from the Immigration Court, and then potentially file appeals from any adverse rulings,' which 'further demonstrates that removal is not likely in the reasonably foreseeable future.'" Riveros Cadavid, 2026 WL 1105032, at *3 (quoting Ndandu, 2026 WL 25848, at *5). Although Respondents state that "ICE ERO is in the process of receiving permission to remove Petitioner to an alternate third country, or in the alternative, repatriate him to Cuba," (ECF No. 10 at 3), Respondents provide no further details regarding what actions have been and will be taken regarding removal to any alternate third country or to Cuba.

Based on the foregoing and under Zadvydas, the Court finds Petitioner's continued detention is unreasonable and no longer authorized by statute.[4] Therefore, Petitioner should be released on appropriate conditions of supervision. See Zadvydas, 533 U.S. at 699–700; 8 U.S.C. § 1231(a)(3) ("If the alien does not leave or is not removed within the removal period, the alien, pending removal, shall be subject to supervision under regulations prescribed by the Attorney General."); 8 C.F.R. § 241.5 (conditions for release after removal period). The Court recognizes that Petitioner has a lengthy criminal history. However, any concerns can be addressed through the conditions of supervision imposed on Petitioner upon his release. See Thai v. Ashcroft, 366 F.3d 790, 797 (9th Cir. 2004) ("Like Ma, Thai is an ordinary violent criminal. If a need to protect the community did not justify the detention of Ma—a killer—under § 1231(a)(6), it similarly does not justify the detention of Thai.").

## B. Third Country Removal

In the petition, Petitioner states that "the idea of being sent to . . . places like Mexico or any other unknown countries fills me with fear and uncertainty." (ECF No. 1 at 7.) The Court construes the petition as also raising a claim challenging Respondents' third country removal

---

[4] Given this conclusion, the Court declines to address whether Petitioner's continued detention without a bond hearing violates due process.

policy. See Qazi, 975 F.3d at 992–93 (9th Cir. 2020) ("It is an entrenched principle that pro se filings however inartfully pleaded are held to less stringent standards than formal pleadings drafted by lawyers. We are specifically directed to construe pro se pleadings liberally. This duty applies equally to pro se motions and with special force to filings from pro se inmates." (internal quotation marks and citations omitted)).

"In recent months, the Government's policy regarding third country removals has shifted substantially. In particular, policy memoranda issued on March 30 [the Noem Memo] and July 9 [the Lyons memo] by DHS have become frequently discussed in similar cases[.]" Escobar v. Chestnut, No. 1:25-cv-01801-DJC-EFB, 2025 WL 3687639, at *2 (E.D. Cal. Dec. 19, 2025).

> The Noem Memo provides two different tracks for removals of noncitizens to third countries, determined primarily by whether the third country in question "has provided diplomatic assurances that aliens removed from the United States will not be persecuted or tortured." (Noem Memo at 10). In instances in which the United States "has received such assurances," which the Department of State "believes to be credible," then "the alien may be removed *without the need for further procedures.*" (*Id.* at 10-11) (emphasis added).
>
> In instances where the United States has *not* received such assurances – or has received assurances but "does not believe them to be credible" – ICE is required to follow a separate procedure. (*Id.* at 11). In those cases, ICE will "inform the alien of removal to that country" but "will not affirmatively ask whether the alien is afraid of being removed to that country." (*Id.*). Only where a noncitizen "affirmatively states a fear of removal" will they be referred to "screening for eligibility for protection under INA § 241(b)(3) and the Convention Against Torture (CAT) for the country of removal." (*Id.*). The Noem Memo provides further guidance as to those noncitizens who *do* affirmatively state a fear of removal to the third country. (*Id.*). It states that the noncitizen will generally be screened within twenty-four hours, after which USCIS "will determine whether the alien would be more likely than not to be persecuted on a statutorily protected ground or tortured in the country of removal." Where a noncitizen does not meet this standard, they "will be removed." (*Id.*). If the noncitizen meets this standard, then the matter will be referred to Immigration Court. (*Id.*). Where the individual in question "was previously in proceedings before the Immigration Court," the immigration officer will inform ICE, which "may file a motion to reopen with the Immigration Court or the Board of Immigration Appeals, as appropriate, for further proceedings" to determine eligibility for protection under INA § 241(b)(3) or CAT for the country of removal. (*Id.*).

The Lyons Memo was issued in light of the Supreme Court's granting the Government's application to stay the district court's nationwide preliminary injunction in *D.V.D. v. Dep't of Homeland Security*, No. 25-10676, 2025 WL 1142968 (D. Mass. Apr. 18, 2025). (Lyons Memo at 13-14). In short, the Lyons Memos provides that "ICE must adhere to [the Noem Memo]." (*Id.* at 13). It reaffirms that, in instances where the United States has received credible diplomatic assurances that "aliens removed from the United States will not be persecuted or tortured," that the noncitizen "may be removed without the need for further procedures." (*Id.*). It reiterates that, "in all other cases," ICE is to notify the noncitizen of the intended country of removal and "will *not* affirmatively ask whether the alien is afraid of being removed to the country of removal." (*Id.*) (emphasis in original). It further provides that ICE "will generally wait at least 24 hours following service of the Notice of Removal before effectuating removal[,]" but that such removal may be executed after six hours in "exigent circumstances[.]" (*Id.*). Where a noncitizen has not affirmatively stated a fear of persecution or torture "within 24 hours," then ICE "may proceed with removal to the country identified on the notice." (*Id.* at 14). The Lyons memo reiterates the procedure detailed in the Noem Memo for those noncitizens that do affirmatively express a fear of removal to the third country in question. (*Id.*).

Esmail v. Noem, No. 2:25-CV-08325-WLH-RAO, 2025 WL 3030589, at *1–2 (C.D. Cal. Sept. 26, 2025) (footnotes omitted).

"'It is well established that the Fifth Amendment entitles aliens to due process of law' in the context of removal proceedings." Trump v. J. G.G., 604 U.S. 670, 673 (2025) (quoting Reno v. Flores, 507 U.S. 292, 306 (1993)). "[A] basic tenet of constitutional due process [is] that individuals whose rights are being determined are entitled to notice of the issues to be adjudicated, so that they will have the opportunity to prepare and present relevant arguments and evidence." Andriasian v. I.N.S., 180 F.3d 1033, 1041 (9th Cir. 1999). Thus, "[f]ailing to notify individuals who are subject to deportation that they have the right to apply for asylum in the United States and for withholding of deportation to the country to which they will be deported violates both INS regulations and the constitutional right to due process." Id. Accord Ibarra-Perez v. United States, 154 F.4th 989, 995 (9th Cir. 2025) ("DHS must also 'notify individuals who are subject to deportation that they have the right to apply for asylum in the United States and for withholding of deportation to the country to which they will be deported'; otherwise, DHS violates their constitutional right to due process." (quoting Andriasian, 180 F.3d at 1041)).

7

Respondents' policy, as set forth in the Noem and Lyon memos, "contravenes Ninth Circuit law, as laid out above. It would be impossible to comply both with Ninth Circuit precedent and the policy." Nguyen v. Scott, 796 F. Supp. 3d 703, 728 (W.D. Wash. 2025) (citations omitted). See Vu v. Noem, No. 1:25-cv-01366-KES-SKO (HC), 2025 WL 3114341, at *9 (E.D. Cal. Nov. 6, 2025) ("ICE's policy is contrary to Ninth Circuit precedent."). Accordingly, Petitioner is entitled to habeas relief on this ground.

With respect to what process is due to a noncitizen who seeks to adjudicate a fear-based claim before removal to a third country, the Court finds A.A.M. v. Andrews, 815 F. Supp. 3d 1124 (E.D. Cal. 2025), instructive. In A.A.M., the district court stated:

> Several decisions from the Western District of Washington, however, have more thoroughly analyzed the constitutionally proper process by which a noncitizen may seek to adjudicate his fear-based claim before removal to a third country. In *Aden v. Nielsen*, 409 F. Supp. 3d 998 (W.D. Wash 2019) the court found that the noncitizen's right to due process in relation to his removal to a third country "includes the right to a full and fair hearing, an impartial decisionmaker, and evaluation of the merits of his or her particular claim." 409 F. Supp. 3d at 1010 (citing *Torres-Aguilar v. INS*, 246 F.3d 1267, 1270 (9th Cir. 2001)). Accordingly, the court in *Aden* found, "[g]iving petitioner an opportunity to file a motion to reopen—a motion which seeks discretionary relief that may be denied without any sort of hearing—is not an adequate substitute for the process that is due in [the third country removal] circumstances." *Id.* Applying that analysis directly to the DHS Third Country Removal Policy, the court in *Nguyen v. Scott*, No. 25-cv-01398, 2025 WL 2419288 at *18 (W.D. Wash. Aug. 21, 2025), found the "requirements set forth in *Aden* flow directly from binding Ninth Circuit precedent about due process protections before removal to a third country," "[t]hat Ninth Circuit precedent is binding on this Court," and "the application of that precedent in *Aden* is persuasive." 2025 WL 2419288 at *18. The court in *Nguyen* therefore issued a preliminary injunction finding that "Petitioner is likely to succeed on his claim that removal to a third country under [the DHS Third Country Removal Policy], without meaningful notice and *reopening of his removal proceedings for a hearing*, would violate due process." *Id.* at 19 (emphasis added).
>
> Further, in applying the holdings from *Aden* and *Nguyen*, the court in *Abubaka v. Bondi*, No. 25-cv-01889-RSL, 2025 WL 3204369, at *6 (W.D. Wash. Nov. 17, 2025) determined "on the merits of petitioner's argument that due process does not allow respondents to 'remove or seek to remove him to a third country without notice and meaningful opportunity to respond in compliance with the statute and due process in reopened removal proceedings.'" The court in *Abubaka* emphasized that even though DHS's Third

Country Removal Policy replaced the policy at issue in *Aden*, the "ruling in *Aden* remains persuasive today and therefore this Court adopts its holdings in *Aden* for the purposes of this ruling ...." *Id.* at 7; *see also Baltodano v. Bondi*, No. 25-cv-1958-RSL, 2025 WL 2987766, at *4 (granting motion for temporary restraining order enjoining Petitioner's removal to third country "without notice and a meaningful opportunity to respond in compliance with statute and due process in reopened removal proceedings").

This court finds these decisions from the Western District of Washington persuasive. Due Process requires that Petitioner receive a full and fair hearing of his fear-based claim in front of a neutral adjudicator. This requirement is not satisfied by simply providing Petitioner the time and opportunity to file a discretionary motion to reopen his immigration proceedings.

A.A.M., 815 F. Supp. 3d at 1140–41.

Accordingly, the Court will enjoin Respondents "from removing Petitioner via a third-country deportation to any country" if "Petitioner does assert a fear-based claim for relief from removal . . . without first providing him a meaningful opportunity to be heard on his fear-based claim before an immigration judge in compliance with due process." A.A.M. v. Andrews, No. 1:25-cv-01514-DC-DMC (HC), 2025 WL 3685159, at *7 (E.D. Cal. Dec. 19, 2025). See Arenado-Borges v. Bondi, No. 2:25-CV-02193-JNW, 2025 WL 3687518, at *7 (W.D. Wash. Dec. 19, 2025) (enjoining government "from removing or seeking to remove Petitioner to a third country without notice and a meaningful opportunity to respond in reopened removal proceedings before an Immigration Judge.").

### III.

### ORDER

Accordingly, the Court HEREBY ORDERS that:

1. The petition for writ of habeas corpus is GRANTED;

2. Respondents SHALL IMMEDIATELY RELEASE Petitioner Yosvany Maza Portilla (A-Number: 209-954-595) under appropriate conditions of supervision set forth in 8 C.F.R. § 241.5;

3. Respondents are ENJOINED AND RESTRAINED from effectuating Petitioner's third country removal unless Respondents adhere to the following procedures:

   a. Provide Petitioner and his counsel a minimum of fourteen (14) days to raise a

fear-based claim for protection prior to removal; and

    b.  If Petitioner does assert a fear-based claim for relief from removal, Respondents must provide Petitioner a meaningful opportunity to be heard on his fear-based claim before an immigration judge in compliance with due process; and

4. Respondents are ORDERED to provide petitioner with a copy of this Order upon his release;

5. The Clerk of Court is DIRECTED to serve Central Valley Annex with a copy of this Order; and

6. Within **TWO (2) days** of the date of service of this order, Respondents SHALL file a status report to confirm that Petitioner has been released.

IT IS SO ORDERED.

Dated:   **August 12, 2026**        /s/ _Erica P. Grosjean_
                              UNITED STATES MAGISTRATE JUDGE